UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-128-JBC

ERNEST L. WILLIAMS                                                                    PETITIONER

VS:                     **MEMORANDUM OPINION AND ORDER**

FEDERAL MEDICAL CENTER
                                                                                       RESPONDENT

Ernest L. Williams, who is confined at the Federal Medical Center in Lexington, Kentucky, ("FMC-Lexington") has filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. The petitioner has paid the requisite filing fee.

This matter is before the court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). Under 28 U.S.C. §1915(e)(2), a district court may

dismiss a case at any time if it determines that the action is (i) frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

## CLAIMS

The petitioner claims that his right to due process of law has been violated. He claims that the State of Georgia violated the Interstate Agreement on Detainers Act (IADA),18 U.S.C.A. App. 2, § 2, by failing to try him in the time frame prescribed by the statute.

## RELIEF SOUGHT

The petitioner asks this court to enter an order quashing the detainer lodged by state officials in Georgia.

## ALLEGATIONS OF THE PETITION

The following is a summary of the allegations contained in the *pro se* petition [Record No. 1] filed in this court on May 7, 2002.

The petitioner states that he is serving a 387-month sentence at FMC-Lexington.[1] He states that on September 15, 2005, a prosecutor in Forsyth County, Georgia, presented an Affidavit to a federal magistrate judge in that county. The petitioner states that the prosecutor sought an arrest warrant for Petitioner and charged him with Theft by Conversion of payments for real property,

---

[1] The petitioner provides no details as to when he was convicted; where; or of what offense(s).

in violation of Georgia state law. Petitioner states that in August, 2006, the Forsyth County Sheriff's Office issued an Extradition Authorization. It appears that the Georgia prosecutor lodged a detainer with the BOP.[2]

Petitioner's Exhibits (3)-(8) document what the petitioner describes as the Bureau of Prisons ("BOP") attempts to comply with the transfer and custodial requirements of the IADA. Specifically, Georgetta Richardson, Inmate Systems Manager at FMC-Lexington, wrote the District Attorney in Georgia on September 1, 2006, stating that the petitioner was requesting disposition of untried charges under the IADA [Record No. 1, pp. 5-6].

Richardson states in her letter that she was providing the necessary documentation for the State of Georgia's compliance with the IADA. Richardson stated as follows in her letter:

> We request action be taken under Article III of the IADA, and that the Form VI, "Evidence of Agent's Authority to Act for Receiving State", and Form VII, "Prosecutor's Acceptance of Temporary Custody Offered in Connection With a Prisoner's Request for disposition of a Detainer", be submitted to us accordingly. The designated agents that return the inmate to your state must also be the persons whose signatures appear on the Form VI. Be advised the designated agents must have in their possession a copy of the Form VI, proper

---

[2] A detainer is a "request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking the institution either to hold the prisoner for the agency or to notify the agency when the release of the prisoner is imminent." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 3403, 87 L.Ed.2d 516 (1985).

3

> identification, and a certified copy of the warrant when assuming custody of the inmate . . . .

[*See* Record No. 1, p. 5]

Petitioner states that the state officials neither responded to the BOP's notification nor initiated any effort to try him on the state charges within 180 days as required under the IADA. The petitioner states that in response to the lack of response by the state officials, he initiated a legal proceeding in the Georgia State Court (specifically, the Superior Court of Forsyth County, Georgia) on March 22, 2007. Petitioner filed a "Motion to Dismiss and Notice of Default" which is attached as Exhibit No. 9 [Record No. 1, pp. 11-16]. Petitioner complains that the existence of the state detainer restricts his ability to be considered for placement in a BOP halfway house. He states:

> The plaintiff has taken every legal step required under IADA to resolve this matter. The State of Georgia has not filed any request for additional time or extension of any deadline, they have, therefore, forfeited their right to prosecute according to the provisions of IADA and the detainer should therefore be quashed.

[Record No. 1, Memorandum, p.4]

## DISCUSSION

The IADA is a compact among the states, the District of Columbia, and the federal government which enables participating states to gain temporary custody of prisoners incarcerated in another jurisdiction in order to try the prisoner on pending criminal charges. *See generally United States v. Mauro*, 436 U.S. 340, 349-53 (1978); *Reed v. Farley*, 512 U.S. 339 (1994). Initially drafted by the

4

Council of State Governments in 1956 and included in the Council's Suggested State Legislation Program for 1957, the IADA contains mandatory procedures for the prisoner who is charged in another jurisdiction, the prison officials where he is incarcerated, and the states in which the charges are pending. *Id.*

All members of the IADA, including the United States, are defined in the statute as "States." *Id.* at Art. II(a). The procedures facilitate a prisoner's being taken from his current custodian in the 'sending state" and transferred temporarily to the "receiving state," which is where charges are pending and trial is to be had on a pending criminal indictment or information. *See* additional definitions in Article II. Article III contains the procedures for a prisoner to initiate the proceedings, and Article IV contains different procedures whereby the prosecutor may initiate proceedings to gain temporary custody of the prisoner. The rights/responsibilities which are contained in and flow from each article are distinct, depending on who initiated the proceedings.

Under the provisions of Article IV of the IADA, "there shall be a period of thirty days" before actual transfer of a prisoner so that "the Governor of the sending State may disapprove the request for temporary custody or availability, either upon his own motion or upon motion of the prisoner." *Id.* at (a). Also, the prosecutor is required to commence the trial within 120 days. *Id*. at (c). Additionally, Article IV has an "antishuttling" subsection, providing that if the prisoner is returned to the sending state without a trial, then the receiving state's

court must dismiss the indictment. *Id.* at (e); *Alabama v. Bozeman*, 121 S. Ct. 2079, 2083-84 (2001).

The IADA allows state officials a period of 180 days in which to act upon a prisoner's speedy-trial request. 18 U.S.C. app. 2, §2, art. III(a). In the instant case, it would appear that this period would have, or should have, begun sometime soon after September 1, 2006, when Georgia officials presumably received the petitioner's request through the BOP. *See Fex v. Michigan*, 507 U.S. 43, 47, 113 S. Ct. 1085 (1993) (the 180-day time period after prisoner "shall have caused to be delivered" request for final disposition of charges against him to prosecuting officer and court of jurisdiction that lodged detainer against him commences, not with prisoner's transmittal of IAD request to prison authorities, but with actual delivery of disposition request to that court and prosecutor).

The petitioner alleges that 180 days expired without any action on the part of the Georgia authorities. Given the petitioner's allegations, and the apparent lapse of time and inaction by the Georgia authorities, the court would benefit from further development of the record. The court will order the respondent to file a response to the instant § 2241 petition. The respondent shall inform the court whether compliance with 28 C.F.R. §§ 542.10-.19 (2007) was necessary.[3]

---

[3] These regulations specify the administrative remedies available to inmates confined in the BOP institutions. Section 542.13(a) demands that an inmate first informally present his complaint to the staff, thereby providing staff with an opportunity to correct the problem, before filing a request for an administrative remedy. If the inmate cannot informally resolve his complaint, then he may file a formal written request (BOP form BP-9) to the Warden. If the inmate is not satisfied

CONCLUSION

Accordingly, **IT IS ORDERED** as follows:

(1)     The respondent in this action is Stephen M. Dewalt, the Warden of FMC-Lexington.

(2)     The Clerk of the Court shall serve by certified mail a copy of the petition and this order upon Respondent Warden Dewalt, and on the Attorney General for the United States, and the United States Attorney for the Eastern District of Kentucky.

(3)     Respondent, by counsel, shall answer or otherwise defend within thirty (30) days of the date of entry of this order.  Respondent shall also file with his answer all relevant documentary evidence which bears upon the allegations contained in the petition.

(4)     Upon entry of a response herein or upon the expiration of said period of time, the Clerk of the court shall notify the Pro Se Office.

(5)     The petitioner shall keep the Clerk of the court informed of his current mailing address.  Failure to notify the Clerk of any address change may result in a dismissal of this case.

(6)     For every further pleading or other document he wishes to submit for consideration by the court, the petitioner shall serve upon each defendant, or, if

---

with the Warden's response, he may appeal (BP-10) to the Regional Director, and, if not satisfied with the Regional Director's response, the inmate may appeal (BP-11) that decision to the Office of General Counsel.  *See* §542.15.

appearance has been entered by counsel, upon each attorney, a copy of the pleading or other document.  **The petitioner shall send the original papers to be filed with the Clerk of the court together with a certificate stating the date a true and correct copy of the document was mailed to each defendant or counsel.  If a District Judge or Magistrate Judge receives any document which has not been filed with the Clerk or which has been filed but fails to include the certificate of service of copies, the court will disregard the document.**

Signed on May 29, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY