UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-CV-128-JBC

ERNEST L. WILLIAMS                                            PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

FEDERAL MEDICAL CENTER                                        RESPONDENT

  Ernest L. Williams, who is confined at the Federal Medical Center in Lexington, Kentucky ("FMC-Lexington"), filed a *pro se* petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2241.  The petitioner alleged that  his right to due process of law, guaranteed by the Fifth Amendment of the United States Constitution, was violated.

  The petitioner has named "FMC-Lexington" as the respondent in this action. The proper respondent in a § 2241 proceeding is the warden of the facility in which the prisoner is confined.  *See United States v. Jalili*, 925 F.2d 889, 893 (6th Cir.1991).  The Court takes judicial  notice that Stephen M. Dewalt is the Warden of FMC-Lexington.  The Clerk of the Court will be directed to designate Warden Stephen M. Dewalt as the respondent to this proceeding.

### 1. § 2241 Petition

  Petitioner Williams is serving a 37-month sentence at FMC-Lexington.  He alleges that the State of Georgia violated the Interstate Agreement on Detainers Act

(IADA),18 U.S.C. App. 2, § 2,  by failing to try him for state offenses within the time frame prescribed by the IADA.

Petitioner asked the Court to enter an order quashing the detainer lodged by state officials in Georgia.[1]  The petitioner alleged in his § 2241 petition that he has undertaken every step necessary under the IADA to have the detainer released.

On May 30, 2007, the Court entered a Memorandum Opinion and Order directing Stephen Dewalt, the warden of FMC-Lexington, to file a response to the § 2241 petition [*See* Record No. 4].[2]  The Bureau of Prisons ("BOP") filed a response to the petition on July 3, 2007 [Record No. 11].  The petitioner filed his Reply on July 11, 2007 [Record No. 12].  The matter is ripe for consideration.

## 2. BOP's Response [Record No. 11]
### A. BOP's Statement of Facts

The BOP has filed the Declaration of Kevin Walasinski, Senior Attorney for the BOP's Consolidated Legal Center in Lexington, setting forth in detail the actions which BOP undertook in compliance the IADA   [*See* Walasinski Decl., Record No. 11- 2].  The petitioner was convicted of violations of 18 U.S.C. §§ 1344, 1349 and 2, bank fraud, in the United States District Court for the Northern District of Georgia.  On June 29, 2005, the petitioner was sentenced to a 37-month term of imprisonment and a

---

[1]

A "detainer" is a request filed by a criminal justice agency with the institution in which a prisoner is incarcerated, asking that the prisoner be held for the agency, or that the agency be advised when the prisoner's release is imminent. *Fex v. Michigan*, 507 U.S. 43, 44, 113 S. Ct. 1085, 1087 (1993).

[2]

The petitioner's factual allegations are set forth in detail in the Opinion and Order.  The Court will not reiterate them here.

5-year term of supervised release.  Walasinski states that the petitioner's projected release date, assuming a full award of good-conduct time, is April 1, 2008, and that his full-term date is August 24, 2008.  *See Id*., ¶ 3.

Walasinski explains that since the petitioner's incarceration at FMC-Lexington, two separate detainers were lodged against him by the State of Georgia.  The first was a Criminal Arrest Warrant from the Forsyth County Sheriff's Department, lodged August 29, 2006, reciting allegations of Theft or Conversion of Payments for Real Property Improvements.  The second was from the Cobb County District Attorney's Office, lodged April 25, 2006, for False Statements and Writings.  Walasinski informs that the latter  detainer was removed by Georgia officials on August 25, 2006, and is not at issue in this action. *See Id*., ¶¶ 4-5.

Walasinski states that after Forsyth County lodged its detainer, the BOP sent a Detainer Action Letter on August 29, 2006, to the Forsyth County Sheriff's Office notifying the office of the petitioner's expected release date. *See Id*., Attachment D. On September 1, 2006, FMC Lexington's Inmate Systems Manager forwarded a letter to the Forsyth District Attorney's Office advising that the petitioner had requested disposition of the untried charges and had invoked the IADA.  *See Id*., ¶ 9. Walasinski's Declaration sets forth in detail the various IADA attachments which accompanied the BOP's September 1, 2006, letter.[3]

---

[3]

Walasinski's Declaration described  the documentation sent to the District Attorney's Office in Marietta, Georgia, concerning that entity's request to lodge a state detainer on the False Statement and Writings Charge. *See* Record No. 11-2 Decl., ¶¶ 14-17.  Walasinski explains that the BOP received copies of the Order from the Superior Court of Cobb County, Georgia, dismissing those charges [*Id*., ¶ 29].  A

The BOP requested that action be taken under Article III of the IADA and that Form IV, "Evidence of Agent's Authority to Act for Receiving State" and Form VII, "Prosecutor's Acceptance of Temporary Custody Offered in Connection with a Prisoner's Request for Disposition of a Detainer," be completed and submitted to the BOP.  The BOP advises that the  Georgia officials have not responded [Record No. 11-1, p. 2].   On May 7, 2007, Petitioner filed the instant § 2241 petition [Record No. 1].

B. BOP's Legal Arguments

The BOP asserts two arguments for dismissal of the instant § 2241 petition. First, citing *Little v. Hopkins*, 638 F.2d 953, 953-954 (6th Cir.1981) (per curiam) and numerous other cases, the BOP contends that exhaustion of administrative remedies was required.  The BOP states that exhaustion of administrative remedies "would better develop the record for the Court's review." [Record No. 11-1, p.3].

In support of its argument that administrative exhaustion under 28 C.F.R. 542.13-15 is required, the BOP asserts:

> "The complex declaration of BOP Senior Attorney Walasinski is evidence of the need to allow the agency the opportunity to develop a factual record and apply its own expertise.  Additionally, exhaustion of remedies would reduce the complicated factual pattern into a more condensed form for the Court. This in turn will insure conservation of judicial time and effort.  Admittedly, the BOP cannot force the State of Georgia to honor or dismiss its detainer, however exhaustion would develop the record for judicial review.

[*See* BOP Response, Record No. 11-1, p.5]

_____

Detainer Action Letter was sent to the District Attorney's Office advising that the detainer on that charge had been removed at its request. [*Id*. ¶ 20].

Second, the BOP contends that because it has fully complied with its obligation under the IADA, it lacks standing to respond for the State of Georgia [Record No. 11, p.3]. The BOP contends that it "has no jurisdiction or authority over the sovereign State of Georgia to adjudicate the petitioner's IAD issue and/or dismiss criminal charges which are within the jurisdictional authority and purview of the Courts of the State of Georgia." [Record No. 11-1, p.7].

Petitioner's Reply to Response [Record 12]

Summarizing the petitioner's reply, he strenuously asserts that exhaustion of the BOP's administrative remedies is unnecessary because the BOP has fully complied with all of the requisite provisions of the IADA. He denies the BOP's characterization that he is challenging the BOP's efforts to comply with the IADA. Petitioner in fact states that the BOP has fully complied with the IADA notice provisions and that no further action is required under the IADA.

DISCUSSION
1. Purpose of the IADA

The IADA is a compact among the states, the District of Columbia, and the federal government which enables participating states to gain temporary custody of prisoners incarcerated in another jurisdiction in order to try the prisoner on pending criminal charges. *See generally United States v. Mauro*, 436 U.S. 340, 349-53 (1978); *Reed v. Farley*, 512 U.S. 339 (1994).

Subsection (a) of Article III of the IADA requires the prisoner to be brought to trial within 180 days after "he shall have caused to be delivered to the prosecuting officer and the appropriate court . . . written notice of the place of his imprisonment and his request for a final disposition. . . . The request of the prisoner shall be accompanied by a certificate [of the prisoner's status]."[4]

If these conditions are complied with and the defendant is not brought to trial within 180 days as provided in the IADA, Article V(c) requires that the indictment against that defendant be dismissed. *See* 18 U.S.C. § 2, Art. V(c).  The prisoner bears the burden of establishing that the required notice under the IADA was given.  *See*, *e.g.*, *United States v. Moline*, 833 F.2d 190, 192 (9th Cir.1987), *cert. denied*, 485 U.S. 938 (1988).

---

[4]

Article III(a) of the IADA provides in pertinent part:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party State, and whenever during the continuance of the term of imprisonment there is pending in any other party State any untried indictment, information, or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information, or complaint.... The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decision of the State parole agency relating to the prisoner.

18 U.S.C.. § 2, Art. III(a).

## 2. Compliance with BOP Administrative Process Unnecessary

Here, the Walasinski Declaration and accompanying materials demonstrate that the former FMC-Lexington Inmate Systems Manager sent the Georgia officials all of the BOP documentation required by the IADA.  The BOP, through Mr. Walasinski's Declaration and various other attachments, describes in painstaking detail the steps it took to comply with the IADA and to notify the Georgia officials that the petitioner demanded a timely disposition of his untried charges in accordance with the IADA. In all, the BOP attached sixty-five (65) pages of supporting documents showing its compliance with the IADA  [Record Nos. 11-3 through 11-7].    The BOP contends generally that completion of its three-step administrative remedy process, set forth in 28 C.F.R. §§ 542.13-15, would "better develop the record for the Court's review." [Record 11-1, p.3]  Given the specific facts and circumstances of this case, the Court disagrees that further exhaustion in accordance with § 542.13-15 would afford any additional benefit to either the parties or the Court.  Kevin Walasinski's Declaration sets forth ample information indicating that the BOP has followed the letter of the IADA's notice requirements.  According to the BOP's most recent filings in this action, the Georgia officials have not responded to the IADA notices.

In the majority of § 2241 habeas petition claims,  exhaustion of the BOP's three-step administrative remedy process aids the district court in evaluating the issues.  For instance, in *Morris v. Smith*, 2005 WL 230403, *6 (M. D. Pa. 2005) (not reported in F. Supp. 2d), the petitioner asserted an IADA violation claim similar to that being asserted here by Petitioner Williams.  In *Morris*, the petitioner argued not only

that he was being deprived of a speedy trial under the IADA, but also that the IADA violation was adversely affecting his BOP custody classification.

The *Morris* court concluded that the petitioner had: (1) failed to thoroughly invoke his rights under the IADA despite being given an opportunity to do so by the BOP officials, and (2) failed to administratively exhaust the challenge to his resulting higher custody classification. *See also United States v. White*, 185 Fed. Appx. 504 (6th Cir. (Ohio) June 23, 2006) (Unpublished disposition) ( Sixth Circuit determined that Petitioner White had not taken the necessary steps under the IADA to notify both the prosecutor and the court in the charging jurisdiction of his request for a speedy trial); and *Hervey v. Sivley*, 1992 WL 323189, *2 (9th Cir.(Ariz) November 9, 1992) (Unpublished disposition) (prisoner asserted no valid habeas claims where he failed either to send proper IADA forms to the court in which he was being charged or to send a certificate of prisoner status).

Here, by contrast, the petitioner has taken every step to manifest his desire to have the Georgia Theft and Conversion charges either dismissed or prosecuted under the time constraints established by the IADA   He has undertaken these steps in two respects: by demanding disposition under the specific requirements of the IADA (as explained in detail by Mr. Walasinski's Declaration) and by filing a state court action in Georgia demanding a timely disposition of his pending charges.

The BOP processed and delivered to the Georgia officials all of the requisite IADA forms relating to the detainer lodged in connection with the Theft and Conversion of Payments charge. Based upon the BOP's comprehensive filing [Record No. 11], it appears that the BOP has fully complied with the IADA's notice

requirements.   As the petitioner correctly notes in his reply, no further action is required under the IADA by either the petitioner or the BOP.

3. *Schofs*

The BOP argues that it "has no jurisdiction or authority over the sovereign State of Georgia to adjudicate the petitioner's IAD issue and/or dismiss criminal charges which are within the jurisdictional authority and purview of the Courts of the State of Georgia." [Record No. 11-1, p.7]

The BOP correctly asserts that this court cannot compel the Georgia state authorities to dismiss the pending state charges against the petitioner.  Federal courts have no general power to compel action by state officers, including state judicial officers. *Davis v. Lansing*, 851 F. 2d 72, 74 (2nd Cir. 1988); *Van Sickle v. Holloway*, 791 F.2d 1431, 1436 n.5 (10th Cir. 1986); *More v. Clerk, DeKalb County Superior Court*, 474 F.2d 1275,1276 (5th Cir. 1973) (per curiam); *Haggard v. Tennessee*, 421 F.2d 1384, 1386 (6th Cir. 1970).

The IADA does not explicitly grant authority to courts in the sending/custodial jurisdiction to render the relief requested by Petitioner Williams.  *See Tungate v. Thoms*, 199 F. Supp.2d 608, 620 (E.D. Ky. 2002), *aff'd in relevant part*, *vacated in part*, 45 Fed. Appx. 502 (6th Cir. 2002) ("The IAD does not explicitly grant authority to courts in the sending/custodial jurisdiction to render a detainer invalid or to dismiss another jurisdiction's charges underlying the detainer.").

However, this court has recognized that the sending jurisdiction may *quash a detainer* lodged by another state under limited circumstances, where the prisoner's rights under the IADA have been violated and the receiving jurisdiction has failed to

9

dismiss the indictment.  *Schofs v. Warden, FCI, Lexington*, 509 F. Supp. 78, 82 (E. D. Ky.1981); *See also Degina v. Carlson*, 1986 WL 15401, at *5 (D. Conn. Dec. 22, 1986).

The facts in *Schofs* were for the most part factually similar, although not identical, to the instant § 2241 petition.  Joel C. Schofs was a federal prisoner who had been convicted in the United States District for New Jersey at Trenton.  He was confined in the Federal Correctional Institution at Lexington, Kentucky,  when he filed a § 2241 petition seeking habeas corpus relief.[5]  He did not challenge his federal conviction, but instead sought relief from a detainer lodged by state authorities in Connecticut.  He asked this Court to quash the detainer lodged against him by the State of Connecticut and to dismiss the charges underlying that detainer.  *Id*. at 79.

Schofs sent three letters to court officials in Connecticut, generally requesting that he be tried as speedily as possible on any pending state charges against him.  *Id* at 79.[6]  The Assistant State's Attorney in the Economic Crime Unit of the Office of the Chief State's Attorney of Connecticut responded; advised Schofs that his letters did not comply with the IADA's notice requirements; and informed him of the necessary steps to be taken.  *Id*.   In response, the Economic Crime Unit sent a request for

---

[5]

FCI-Lexington is now known as the Federal *Medical* Center-Lexington.

[6]

The letters are discussed in detail in *Schofs*.  In one of the letters, Schofs referred to the IADA and the Speedy Trial Act. *Schofs*, 509 F. Supp at 79.  It is not necessary to describe the contents of Schofs's various letters in this Memorandum Opinion and Order.

temporary custody of Schofs to the Warden of FCI-Lexington.  Schofs then filed his § 2241 petition seeking a writ of habeas corpus.

This court first determined that because the detainer lodged by the state of Connecticut invoked the IADA, and because the warden of FCI-Lexington was giving effect to the detainer, Schofs qualified as a person in custody under or by color of the authority of the United States.  *Id* at 80.  The court concluded that it had jurisdiction to entertain Schofs's § 2241 petition.  *Id*.

The court then considered whether quashing the detainer filed by the state of Connecticut was an appropriate remedy.  Citing *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 93 S. Ct. 1123 (1973), the court noted that a petitioner seeking § 2241 relief, alleging improper action by a state, must generally exhaust state judicial remedies.  *Id*.  The court then discussed the detrimental effects that a detainer has on a prisoner:

> "A detainer does not simply prevent the officials having custody of a prisoner from releasing him until the authorities requesting the detainer have had an opportunity to try him. A detainer has other, serious consequences for the prisoner. It causes him anxiety and concern and may deprive him of participation in prison programs, inhibit rehabilitation and affect conditions of confinement and eligibility for parole. *Smith v. Hooey*, 393 U.S. 374, 89 S. Ct. 575, 21 L. Ed.2d 607 (1969); *Trigg v. Moseley*, 433 F.2d 364 (10th Cir. 1970)."

*Schofs*, 509 F. Supp. at 80-81.

This court concluded that the detainer had caused serious, present effects on Schofs, specifically the addition of seventeen months to his federal sentence.  *Id*. at 81.  The court next considered the merits of Schofs's motion to quash the detainer, without first requiring him to return to Connecticut to stand trial.  *Id*.  The court noted

11

that the IADA should be construed liberally to effectuate its purposes, which are "to encourage the expeditious and orderly disposition of outstanding charges, to determine the proper status of detainers, and to establish cooperative procedures for the attainment of those goals. 18 U.S.C. App. Section 2, Art. I" *Id*. at 81.

The court further explained that the IADA's primary goal was to protect prisoners against outstanding detainers. *Id*. The court noted that Schofs had, through no fault of his own, been denied the necessary forms with which to comply with the requirements of the IADA. *Id* at 82. After lengthy analysis, the court determined that Schofs's third letter, requesting a final disposition of the charges against him, constituted compliance with the IADA's notice requirements and commenced the running of the 180 days. *Id*.

Citing *Campbell v. Commonwealth of Virginia*, 453 F.2d 123 (10th Cir. 1972), the Court noted that  a federal court has jurisdiction to relieve a federal prisoner from the burden of a state detainer.  The court determined that because Schofs had clearly manifested his request for final disposition of the charges against him, the detainer would be quashed.  *Id*. at 81-82.

The court refused, however, to dismiss the state charges underlying the detainer. *Id*.  The court explained that *Braden* requires exhaustion of available state court remedies, not including a return for trial, in order to obtain dismissal of the state charges.  *Id* at 82.  The court found that Schofs had not properly exhausted his state judicial remedies as to the charges underlying the detainer.  Finally, the court noted that  principles of comity and abstention counseled against dismissing the state charges. *Id*.

4. Application of *Schofs*
to Instant Petition

The IADA is designed in part to benefit prisoners by providing them a means, in Article III, to file a Request for Disposition to force prompt resolution of existing charges and detainers, and thus eliminate the anxiety, uncertainties and hardship which may be caused by the existence of a detainer. *See Carchman v. Nash*, 105 S. Ct. 3401, 3403-04 (1985).

Here, Petitioner Williams received a 37- month sentence. The BOP explains that the petitioner's full-term release date is August 24, 2008, but that after applying good time conduct credits, his projected release date is April 1, 2008 [Record No. 11-2, p.2]  Under 18 U.S.C. § 3621(b) and 18 U.S.C. § 3624(c), the BOP is authorized to place the petitioner in a Residential Re-Entry Center ("RRC"), for up to 10% of the last part of  his 37-month sentence.[7]

---

[7]

RRC's were previously referred to as Community Corrections Centers ("CCC"). It is important to note that while the BOP is *allowed* to place the petitioner in an RRC for the last ten percent of his federal sentence, § 3624(c) does not *require* the BOP to place him in an RRC for that entire period of time. The statute requires the BOP to assure that inmates spend *a reasonable part*, not to exceed six months, of the last ten per cent of a sentence in an RRC.

The amount of time which the BOP grants for pre-release RRC confinement is generally determined by evaluation under BOP Program Statement 7310.04, *Community Correction (CCC) Utilization and  Transfer Procedures*, (December 16, 1998).  This Program Statement instructs the BOP to decide RRC placement term based upon consideration of a number of factors, including  the severity of the offense, criminal history, sentence length, institutional adjustment, the inmate's individual needs, the existence of established community ties and availability of outside resources.

Assuming for the moment that the BOP will exercise its discretion to place Petitioner Williams in an RRC for the entire 10% percent period (3.7 months), such placement could begin as early as 3.7 months prior to April 1, 2008, which would be around the middle of December, 2007.  Accordingly, as it is early fall, 2007, the time has approached, or will soon  approach,  for consideration of RRC placement for this petitioner.  The petitioner stresses the RRC placement issue in his petition [Record No. 1, pp. 2 and 4] and the BOP does not appear to contest his assessment in its Response.

With each passing day, the existence of this detainer could be adversely affecting the petitioner's eligibility for RRC placement and/or the duration of his RRC placement. This is in addition to the other adverse effects caused by a detainer, such as  loss of prison privileges, namely prison jobs and participation in prison programs. *See Schofs*, 509 F. Supp at 81 (discussing consequences of a detainer on a prisoner).

Even if the BOP determines that an RRC  term shorter than 3.7 months is warranted, the existence of a detainer from the State of Georgia could still adversely affect the petitioner's placement in an RRC.  This was the conclusion which this Court reached in *Schofs*, and the same rationale applies with equal force to the facts in this case.

Here,  the 180-day period under the IADA began to run sometime soon after September 1, 2006, when Georgia officials presumably received the petitioner's request through the BOP.  *See Fex v. Michigan*, 507 U.S. at 47 (the 180-day time period after prisoner "shall have caused to be delivered" request for final disposition of charges against him to prosecuting officer and court of jurisdiction that lodged detainer against him commences, not with prisoner's transmittal of IADA request to

prison authorities, but with actual delivery of disposition request to that court and prosecutor).

The BOP's filings reflect that Petitioner Williams has taken all of the steps necessary under the technical requirements of the IADA.[8]   As the Georgia officials have apparently made no effort to try the petitioner on his pending charges, the detainer must be quashed.

*Gibson v. Klevenhagen*, 777 F.2d 1056 (5th Cir. 1985) provides additional persuasive authority suggesting that the detainer lodged against Petitioner Williams should be quashed.   There, a Florida prisoner made repeated speedy-trial demands in the state courts of Texas, which had indicted him and placed an interstate detainer in his prison file.  *Id*., at 1058.  The Fifth Circuit determined that the prisoner had, for habeas corpus purposes, exhausted all available state court remedies for consideration of his speedy-trial claim even though he had not yet been brought to trial. *Id*.

The Fifth Circuit considered whether Gibson had a valid habeas claim under the 180-day deadline in Article III, § 2 of the IADA. The court concluded that Gibson had complied with the procedural requirements of the IADA.   The *Gibson* court further explained as follows:

> "This Court is hard pressed to conceive of a way in which Gibson, acting pro se, could have effected any better compliance with the IADA. . . . Accordingly, we hold that the district court below committed error in holding that the procedures outlined in the IADA have not been followed.

---

[8]

The Court is aware that in *Schofs*, the petitioner had in fact fully pursued the BOP's three-step administrative remedy process under 28 C.F.R. § 542.13-15. *Schofs*, 509 F. Supp. at 80.  Here, given Petitioner Williams and the BOP's full compliance with all of the IADA's notice requirements, exhaustion under § 542.13-15 would not have afforded any additional benefit to either the parties or the Court.

15

The state of Texas having failed to accept custody of Gibson within the required time after he made an effective and timely assertion of his rights under the IADA requires dismissal with prejudice of the indictment and removal of the detainer."

*Id*. The Fifth Circuit reversed the district court's dismissal of Gibson's application for a writ of habeas corpus and remanded with instructions that the detainer placed in Gibson's prison file be removed  *Id*.

Given the BOP's comprehensive documentation contained in Record No. 11, this court likewise cannot conceive of a way in which Petitioner Williams "could have effectuated any better compliance with the IADA." (quoting *Gibson*, at 1058).  The Georgia officials appear to have failed to respond to the IADA notices. The court must quash the detainer lodged by the Georgia state officials.

Likewise, as *Schofs* counsels, this Court is not authorized to dismiss the pending charges in Georgia. *See also Miles v. Rees*, 2007 WL 1455872, *4 (E.D. Ky. 2007) ("There is no precedent that would permit this Court, as the sending jurisdiction, to *dismiss* the untried charges.") (Emphasis in the original).[9]

---

[9]

In *Miles*, this Court dismissed the § 2241 petition without prejudice because Petitioner Miles had not exhausted his claims in state court.  He had made no demand in the Tennessee state courts for Tennessee officials to dispose of his untried charges under the IADA.  *See Miles*, 2007 WL 1455872 at *2. The court then took the opportunity to explain to Petitioner Miles that Tennessee would be the more convenient forum to file in federal court after he had exhausted his remedies in state court *Id*. at *4.

Here, Petitioner Williams has filed a state court action and is facing immediate harm by reason of the detainer, and this court has authority to grant relief by quashing the detainer.  It is a more efficient use of limited judicial resources for this court to address the matter now rather than have Petitioner Williams file the same claim in another federal court.

The petitioner has filed documentation indicating that on March 26, 2007, he initiated court proceedings in Georgia to have the untried state charges against him dismissed [Record No. 1-3, pp. 11-16].[10]   If Petitioner Williams wishes to pursue that objective, he must continue to avail himself fully of the machinery in the state courts of Georgia.  *See Atkins v. Michigan*, 644 F.3d 543, 546, n.1 (6th Cir. 1981);  *Anaya v. Tennessee Dep't of Corr.*, 1986 WL 8844, at *1-2 (E. D. Tenn. June 6, 1986). [11]

<u>CONCLUSION</u>

**IT IS THEREFORE ORDERED**:

(1)      The Clerk of the Court is directed to designate Warden Stephen M. Dewalt as the respondent to this § 2241 proceeding.

(2) The petition for writ of habeas corpus [Record No. 1] is **GRANTED** in **PART** and **DENIED** in **PART**;

(3)      The petitioner's motion  to quash the detainer lodged against him by the State of Georgia, (for Theft by Conversion of Payments for Real Property) is hereby **GRANTED**;

(4) Any construed motion by the petitioner to dismiss the charges against him which are the subject of the detainer filed by the State of Georgia is hereby **DENIED**;

---

[10]

While it is not necessary for the disposition in this Memorandum Opinion and Order, the record does not reveal what the State of Georgia's response was, if any, to the petitioner's action filed in the Superior Court of Forsythe County, Georgia.

[11]

In the context of "pretrial petitions" under § 2241, "the exhaustion requirement . . . is satisfied when the petitioner has availed himself fully of the state machinery in attempting to have the state commence trial on the charges pending against him." *See Atkins v. Michigan*, 644 F.2d at 547.

(5) The respondent, Stephen M. Dewalt, Warden, FMC- Lexington, shall report to this Court within ten (10) days of the date of this order whether the petitioner, Ernest L. Williams, is currently being held for any other reason than by operation of the now-quashed detainer;

(4) The petitioner's waiver of extradition and consent to production are hereby cancelled, set aside, and held for naught; and

(5) The request for temporary custody of the petitioner is hereby cancelled, set aside, and held for naught.

Signed on September 11, 2007

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY